ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Gulf Pacific Contracting, LLC | ) | ASBCA No. 61434 |
| | ) | |
| Under Contract No. FA4417-16-D-0002 | ) | |

APPEARANCE FOR THE APPELLANT:      Laurence J. Zielke III, Esq.
      Zielke Law Firm, PLLC
      Louisville, KY

APPEARANCES FOR THE GOVERNMENT:      Jeffrey P. Hildebrant, Esq.
      Air Force Deputy Chief Trial Attorney
      Christopher M. Judge-Hilborn, Esq.
      Maj Michelle E. Gregory, USAF
      Trial Attorneys

MAJORITY OPINION BY ADMINISTRATIVE JUDGE PROUTY

The Davis-Bacon Act, 40 U.S.C. §§ 3131-3148, is a fact of life in federal government construction contracting. By requiring the payment of local prevailing wages to contractor employees in certain circumstances, it may force contractors to pay their employees more than they might otherwise when they begin contract performance and to further increase wages in the midst of performance or following the exercise of options by the government. The Federal Acquisition Regulation (FAR) provides a contracting officer (CO) multiple ways to address these increased costs through prescribed clauses to be inserted into a contract. One such clause (which we will refer to as "the no-adjustment clause" throughout) takes the approach of informing the contractor that there will be no adjustment to the prices in the awarded contract unless it is provided for elsewhere in the contract, which implies that (unless there is a separate contract provision saying otherwise) the contractor should price its option years to take into account the risk of increased wages. That is the clause that was included in the above-captioned contract (the contract) which is the subject of today's dispute.

This appeal is before us under the auspices of Board Rule 11, which permits its resolution on the record, without a hearing and live testimony. As detailed below, appellant, Gulf Pacific Contracting, LLC (Gulf Pacific), had a contract to perform various construction-related services at Hurlburt Field in Florida. Coincident with the government's exercise of its first option year, the Department of Labor (DOL) issued new wage determinations, with the upshot being that Gulf Pacific needed to pay some of its employees more during the option period. Gulf Pacific demanded additional

1

compensation from the government and the CO refused, pointing to the no-adjustment clause, which precluded such additional payment. Gulf Pacific appeals this decision, arguing that it was not on notice that it would be required to absorb this cost in its option pricing and that the no-adjustment clause is defective.

Judge Clarke agrees with Gulf Pacific, contending that the FAR-required no-adjustment clause contained in the contract did not meet the requirements of the policy portion of the FAR which set forth the CO's options for addressing wage adjustments. We respectfully disagree with Judge Clarke. The drafters of the FAR made the no-adjustment clause consistent with their earlier dictates about how to handle such situations. Gulf Pacific also argues that the no-adjustment clause is ambiguous. It is not. Gulf Pacific, as discussed below, is entitled to no additional compensation.

FINDINGS OF FACT

On September 26, 2016, the United States Air Force 1st Special Operations Contracting Squadron awarded to Gulf Pacific the contract, a firm-fixed-price, indefinite-delivery indefinite-quantity (IDIQ) construction contract, to paint the interior of facilities, paint the exterior of facilities, and stripe runway pavement at Hurlburt Field in Florida (R4, tab 4 at 1-4). The base period of performance was one year, with four option years (*id.* at 5-6).

As part of the solicitation that led to the award of the contract, offerors were required to provide prices for the base year and each option year, and those prices were to come from a "Line Item List" attached to the solicitation that the contractor was to fill out (app. supp. R4, tab 14 at 4-6). The Line Item List is an extensive 15-page document and includes services that may be ordered under separate contract line items, estimated quantities of those services, and space for the contractor to insert its pricing. It includes separate pricing lists for the base year and all four individual option years. (*See* R4, tab 4a) In its initial bid, Gulf Pacific, in fact, priced some components of its option years[1] differently than the base year (compare R4, tab 11 at 13-15 to R4, tab 11 at 19-21). A number of Gulf Pacific's prices in the line items went down between the base year and the option years – enough for the government to raise the issue with Gulf Pacific during pre-award discussions. In response to these concerns, Gulf Pacific ascribed the decreased

---

[1] Based on the parties' discussions during the government's consideration of Gulf Pacific's proposal, we can conclude that there were changes in unit pricing between the base year and the option years as well (*see* R4, tab 2 at 3 (referencing discussions about variance in base and option years)), but the Line Item List for the base year, as completed by Gulf Pacific does not appear to be part of the record for us to report it directly. Apparently, neither party was able to find it during discovery (*see* gov't br. at 6 n.1), but this is of no significance since the matter is not in dispute.

prices to its anticipated "increased production efficiency" as it performed the contract (R4, tab 2 at 3). To be clear, however, at least one[2] price component increased between option years 1 and 3 (*compare* CLIN 1004AG, located at R4, tab 11 at 15 to CLIN 3004AG, located at R4, tab 11 at 21).

The contract incorporates by reference FAR 52.222-6, CONSTRUCTION WAGE RATE REQUIREMENTS (MAY 2014) (R4, tab 4 at 14). In part, this provision requires "laborers and mechanics employed or working upon the site of the work will be paid unconditionally . . . at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof." FAR 52.222-6(b)(1)

The contract also incorporates by reference FAR 52.222-30, CONSTRUCTION WAGE RATE REQUIREMENTS—PRICE ADJUSTMENT (NONE OR SEPARATELY SPECIFIED METHOD) (MAY 2014) (R4, tab 4 at 14). This is the no-adjustment clause referenced herein. In relevant part, this provision inserts the following text into the contract:

> (a) The wage determination issued under the Construction Wage Rate Requirements statute by the [DOL], that is effective for an option to extend the term of the contract, will apply to that option period.

> (b) The Contracting Officer will make no adjustment in contract price, other than provided for elsewhere in this contract, to cover any increases or decreases in wages and benefits as a result of [such a wage determination]

FAR 52.222-30.

For the contract at issue here, there is no other mechanism for adjusting the option price to cover increases or decreases in wages caused by wage determinations "provided for elsewhere in th[e] contract" (*see* R4, tab 4).[3]

For unknown reasons, the contract also incorporates by reference FAR 52.216-7, ALLOWABLE COST AND PAYMENT – ALT I (JUN 2013) (*see* R4, tab 4 at 14). This

---

[2] The government identified this one particular increase, but no others, and we have not compared the remainder of the prices line by line as it is unnecessary for our decision today.

[3] Gulf Pacific argues that two particular contract provisions may constitute mechanisms to pay wage rate increases, which we will address in the Decision section, below, but identifies no provision establishing an entitlement to payment for wage rate increases.

3

FAR provision, by its terms, governs compensation in cost reimbursement or time-and-materials contracts and the first line of the clause directs that it is used "as prescribed in 16.307(a)." FAR 16.307(a), in turn, prescribes the use of the clause in FAR 52.216-7 in cost reimbursement and time-and-materials contracts. Subpart 16.3 of the FAR (of which FAR 16.307 is a subsidiary part) is entitled "COST-REIMBURSEMENT CONTRACTS." As stated earlier, the contract at issue is not a cost reimbursement contract, but is a firm-fixed-price contract.

Of relevance to the arguments advanced by Gulf Pacific here, we also note that the contract incorporated by reference the clause found in the Department of Defense Supplement to the FAR (DFARS) 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT (DEC 2012) (R4, tab 4 at 16).

On September 8, 2016 (18 days before contract award), the government amended the solicitation for the contract to include the most recent applicable DOL Wage Rate Schedule, No. FL160029, dated August 5, 2016 (app. supp. R4, tab 15). Gulf Pacific submitted its final prices on September 15, 2016 (R4, tab 12) and, as previously noted, the contract was awarded on September 26, 2016.

On September 8, 2017, the DOL issued a wage determination increasing the hourly prevailing wages for painters (*see* R4, tab 7 at 5). Thus, on September 14, 2017, while unilaterally modifying the contract to exercise Option Year 1, the CO incorporated this new wage determination (R4, tab 7).

Upon receipt of the contract modification the same day, Gulf Pacific asked the CO how it would be compensated for the increased wage costs. The CO initially responded in an email stating that it could file a request for equitable adjustment, but reversed himself 18 minutes later, informing Gulf Pacific that the FAR's no-adjustment clause, incorporated into the contract, did not allow for such compensation. (R4, tab 13)

Gulf Pacific submitted a certified claim to the CO on October 11, 2017, seeking an equitable adjustment in the amount of $120,000, representing the additional costs it expected it would incur as a result of the prevailing wage adjustment (R4, tab 8). The CO denied the claim in a final decision dated October 23, 2017 (R4, tab 9).

Gulf Pacific timely appealed this decision to the Board.

<u>DECISION</u>

The question before us is whether the CO's inclusion in the contract, by reference, of the FAR's no-adjustment clause was sufficient to preclude Gulf Pacific from recovering the extra costs it incurred by imposition of higher wage rates after contract award. The answer is that it does.

4

I. The FAR Permits the Government to Make no Compensation to the Contractor for Wage Increases if the Contract so Specifies

The no-adjustment clause is not included in the contract by happenstance, nor is its wording careless. Rather, it fits within a well-planned regulatory scheme to address the consequences of the Davis-Bacon Act, which begins with FAR 22.404-12, LABOR STANDARDS FOR CONTRACTS CONTAINING CONSTRUCTION REQUIREMENTS AND OPTION PROVISIONS THAT EXTEND BEYOND THE TERM OF THE CONTRACT (MAY 2014). Subsection (c) of this regulatory provision requires the CO to include, in fixed price construction contracts, a clause that specifies one of four methods, "to provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract." The four methods are: 1) no adjustment, but the contractor may have the opportunity to take the possible changes into account when it bids the options; 2) some sort of adjustment separately specified in the contract; 3) a price adjustment based on a percentage rate of a published economic indicator specified by the contract; and 4) a price adjustment based upon actual costs.

Since method (1) (no adjustment) was the choice of the CO here, it is helpful to quote it in its entirety:

> (1) The contracting officer may provide the offerors the opportunity to bid or propose separate prices for each option period. The contracting officer must not further adjust the contract price as a result of the incorporation of a new or revised wage determination at the exercise of each option to extend the term of the contract. Generally, this method is used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years.

FAR 22.404-12(c)(1)

Just a few pages later in the FAR, FAR 22.407 specifies that pre-drafted contract clauses contained in the FAR are to be inserted into contracts to effect the four particular options denoted by FAR 52.222-30. As stated in FAR 22.407(e), both the "no adjustment" method and the "separately specified" method were to be reflected by the insertion of the contract clause contained in FAR 52.222-30, the no-adjustment clause. This is what happened here.

Gulf Pacific argues that, by law, the government is required to compensate a contractor through the use of an equitable adjustment when compliance with a DOL wage

determination increases its costs, and cites our opinion in *Sonoran Tech. and Prof'l Svs., LLC*, ASBCA Nos. 61040, 61101, 17-1 BCA ¶ 36,792, in support of this conclusion (*see* app. br. at 13). But in *Sonoran Technology*, the government used a different type of contract than present here (it was a services contract, rather than a construction contract), and, instead of including the no-adjustment clause, the contract (properly) used the clause in FAR 52.222-43, which expressly *required* adjustment of the contract price to account for increased wage rates. *See* FAR 52.222-43(d) (quoted in *Sonoran Tech.*, 17-1 BCA ¶ 36,792 at 179,329).[4]

Thus, the FAR permits the government to draft a contract to preclude additional payment to a contractor for increased costs during performance of an option that are caused by new Davis-Bacon Act labor rates and direct that the method it uses to do so be the inclusion of the contract provision set forth in FAR 52.222-30, the no-adjustment clause.

II.   The No-Adjustment Clause Complies With the FAR's Davis-Bacon Act Framework

Judge Clarke's dissenting opinion is based upon the notion that the no-adjustment clause does not comply with the Davis-Bacon Act framework set forth in FAR 22.404-12. As Gulf Pacific and Judge Clarke would have it, a FAR-compliant contract provision for the no-adjustment option would specifically inform the contractor that it would not receive any adjustment in contract price for labor rate adjustments and direct them to price their option years accordingly. They argue that the no-adjustment clause does not do so. They are incorrect both in terms of what the FAR required and about what was included in the contract.[5]

---

[4] *Sonoran Technology* was also a single-judge decision, issued under the auspices of Board Rule 12.2, which means that it has no value as precedent. *See Sonoran Tech.*, 17-1 BCA ¶ 36,792 at 179,328 n.1. Thus, even if its facts were similar to those presented here, it would not be controlling.

[5] We do, however, agree with Judge Clarke that whether the contract complies with the FAR provisions relating to adjusting payment to account for wage rate increases is a matter that may be challenged by a contractor. *See Freightliner Corp. v. Caldera*, 225 F.3d 1361, 1365 (Fed. Cir. 2000).

A.    We Read the FAR as a Whole

The argument that one part of the FAR is not compliant with another, and therefore must be set aside, is problematic and unsupported by law cited to us.  To be sure, the FAR is comprehensive, spanning multiple volumes, but the R in FAR stands for regulation:  singular.  As such, we interpret it as we would any other regulation.  Thus, we read it in a manner that seeks to avoid finding portions of it "inoperative or superfluous, void or insignificant," an interpretation that is disfavored by the law.  *See, e.g., Baude v. United States*, 955 F.3d 1290, 1305 (Fed. Cir. 2020) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).  Put another way, we generally presume that the authors of the FAR, the FAR Council, knew what they were doing and drafted their mandatory contract provisions to be consistent with the portions of the FAR laying out the policy those provisions were drafted to effect.[6]

B.    "May" Does not Mean "Must" and the Mandatory Contract Clause at FAR 52.222-30 – the No-Adjustment Clause – is Consistent With the Policy set Forth in FAR 22.404-12

Judge Clarke's dissent argues that the provision in FAR 22.404-12 governing the "no change" option which states that "[t]he contracting officer *may* provide the offerors the opportunity to bid or propose separate prices for each option period" (emphasis added) means that the no-adjustment clause, in fact, *must* give the contractor such an opportunity.  The basis for this conclusion is the earlier, introductory language in FAR 22.402-12 stating that the purpose of the mandatory contract clause was "to provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract."  To Judge Clarke, if the contractor were not given an opportunity to propose separate prices for option years in the mandatory clause, there would be no "allowance for" the increases or decreases in costs due to wage determinations.  We do not find this argument compelling.

First, of course, when we interpret a regulation (or statute or contract for that matter), in addition to reading it as a whole, we generally give its words their normal or usual meanings.  *See, e.g., Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339, 1346 (Fed. Cir. 2005); *Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227-28 (Fed. Cir. 1997) (plain language and "ordinary meaning").  The normal use of "may" is that it is a permissive choice, not a command.  Indeed, that is the word's essence, so we see the FAR Council's selection of "may" rather than "shall" or "must" to bear particular significance.

---

[6] Of course, if there were an unresolvable contradiction between a policy portion of the FAR and its mandatory contract provisions, we would need to address it.  As discussed below, we do not have that here.

7

Second, the fact that the no-adjustment clause does not require the CO to provide an allowance for separate offers for option periods is also proof that the FAR Council meant "may" as "may." At first blush this may seem as circular reasoning, but it is not: there would need to be good evidence for us to find that the FAR Council intended "may" to mean "must," but, instead, the same body that chose "may" in FAR 22.402-12 drafted the provision in FAR 52.222-30 differently than it would have if "may" meant "must." This is good evidence that, yes, "may" meant "may."

An argument that rhymes with the previous one (though is not *exactly* the same) is that reading "may" as "must" in FAR 52.222-30 would be to make the no-adjustment clause "inoperative or superfluous, void or insignificant," *see Baude*, 955 F.3d at 1305, which we have already stated is a disfavored interpretation.

We answer Judge Clarke's argument, that the no-adjustment clause would not provide any allowance for an increase in costs if it was not required to allow for them, by making two observations: the first is that this language may be read as prefatory or introductory, explaining what the general intent (or aspiration) of the provision is without imposing direct requirements – the actual requirements being what comes in the sentences to follow. The second is that the "allowance for cost" is made by the multiple options that follow in this FAR provision, and that if the CO chooses the one option where there is no ability to charge for costs and no requirement to permit the submission of different prices for option years[7], then the very act of stating as much in the contract provision provides for such an allowance in its own way: the contractor is on notice that it must price its entire contract so that the possible exercise of an option after a wage increase is accounted for. Put slightly differently, if the contractor knows before it prices its contract that it risks its options being exercised after a wage increase and that there will be no other recompense, it may price its contract to account for such a contingency. Thus, a contract provision making this statement would meet the goal of "providing an allowance for the increase or decrease" of labor costs during option years.

Finally, even if may meant must, nothing in FAR 22.402-12 would require that the allowance for separately-priced option years be placed in the no-adjustment clause, itself. The CO would only be required to do that somewhere in the contract. And, of course, the contract permitted different option year pricing, which Gulf Pacific took advantage of, as described above in the Facts section.

---

[7] Even though we find this permissible, we find it an extremely unlikely circumstance. Although technically possible, we have never seen a solicitation in which the government required option year pricing to be exactly the same as that in the base year (it certainly did not require it here). To be sure, a contractor might choose to bid a contract that way, but that would be by choice, not government mandate.

With all of this in mind, we find that the contract provisions set forth in the FAR's no-adjustment clause meet the relatively simple requirements of FAR 22.402-12 since all that is truly required in the no-adjustment option is that the contracting officer make no adjustment to the contract price. FAR 22.404-12(c)(1).

 III. The Inclusion of the No-Adjustment Clause in the Contract Precluded Payment to Gulf Pacific for Labor Rate Increases During the Option Years

  A. The CO was Within his Rights to Include the No-Adjustment Clause in the Contract

Gulf Pacific makes the argument that the no-adjustment clause was only to be used in circumstances in which the contract was limited to three years of total performance (*see* app. br. at 3; app. reply br. at 5-6). Like Judge Clarke, we find that the regulation was not so limiting. The regulatory language provided that, "generally," the no adjustment provision was to be used in contracts not expected to last more than three years. *See* FAR 22.404-12(c)(1). It did not preclude its use in contracts that lasted longer: it was "general" in application and, indeed, could be read to say when the no-adjustment clause was to be used, not when it wasn't.

  B. The Language of the No-Adjustment Clause Included in the Contract is not Ambiguous and Precludes Payment to Gulf Pacific

Having held above that the FAR permits the CO to decide to preclude extra compensation for wage adjustments and that the language in the no-adjustment clause effecting that decision is not defective because it does not separately inform the contractor that it should price its option years to account for the possibility of Davis-Bacon Act wage adjustments, we turn to the final significant challenge made by Gulf Pacific: its assertion that the no-adjustment clause is ambiguous. This alleged ambiguity rests upon the clause's statement that no adjustment to the price would be made "other than provided for elsewhere in this contract." Gulf Pacific argues that both the clause allowing for requests for equitable adjustment (REAs) and the Allowable Payment clause provide some venue "elsewhere in the contract" for payment (*see* app. reply br. at 7-8). The argument is unpersuasive.

The REA clause incorporated by reference in the contract is DFARS 252.243-7002. This clause explains how to file an REA for "contract adjustment[s] for which the Contractor believes the Government is liable." DFARS 252.243-7002(a) It does not establish entitlement to the adjustment in the first place. *Id.* Thus, it does not create an ambiguity because the REA clause cannot be reasonably read to create an independent basis for the CO to pay Gulf Pacific for the wage increase. *See NVT Tech., Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) (citing *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 751 (Fed. Cir. 1999)) (contract ambiguous if susceptible to more than one reasonable interpretation).

The Allowable Payment clause, too, does nothing to make the meaning of the no-adjustment clause ambiguous. As noted above, this standard clause, though included in the contract, has no applicability to it since, by its terms, it governs cost-reimbursement contracts. Gulf Pacific argues that it must have some applicability to the contract on the basis that a contact "must" be read so as to leave no portion superfluous (app. reply br. at 7 (citing *NVT*, 370 F.3d at 1159)). But the law is not quite what Gulf Pacific says it is. It does not require the impossible action of forcing a square contractual peg into a round hole that has no room for it, but merely *prefers* an interpretation that harmonizes all parts of the contract, if possible. *See NVT*, 370 F.3d at 1159 ("interpretation that gives meaning to all parts of the contract is to be preferred over one that leaves a portion of the contract useless, inexplicable, void, or superfluous"). Indeed, we have recognized that, contracts being assembled by people, surplus boilerplate can, on occasion, be included without changing the meaning of the contract. *See Watts Constructors, LLC*, ASBCA No. 61493, 20-1 BCA ¶ 37,563 at 182,385-86. The Allowable Payments clause, since it cannot be applicable to the contract, creates no vehicle for adjusting the price of the contract and thus creates no ambiguity.

Finally, we note that, had there been any confusion on the part of Gulf Pacific, that confusion should have been eliminated when it looked up the no-adjustment clause in the FAR.[8] The preface to the clause states that it is inserted pursuant to the direction in FAR 22.407(e). FAR 22.407(e), in turn, refers the reader to FAR 22.404-12(c)(1) and (2), which underscore exactly how the regulatory scheme is laid out. Thus, Gulf Pacific's arguments that the contract was ambiguous are even less supported, just as its generalized, equitable arguments that it was not on notice that it would need to deal with Davis-Bacon Act wage adjustments (*see* app. reply br. at 8-9) are unpersuasive.[9]

With this in mind, there is no basis for us to read the no-adjustment clause in any way besides precluding additional payment by the CO.

---

[8] Because the clause is incorporated by reference, recourse to the FAR provision would be necessary.

[9] Of course, Gulf Pacific was on particular notice of the salience of Davis-Bacon Act wage adjustments by virtue of the fact that the government required a re-bid just prior to contract award when a DOL wage adjustment was issued.

10

## CONCLUSION

For the reasons stated herein, the appeal is denied.

Dated:  September 16, 2021

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

JAMES SWEET
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

BRIAN S. SMITH
Administrative Judge
Armed Services Board
of Contract Appeals

I dissent (see attached opinion)

CRAIG S. CLARKE
Administrative Judge
Armed Service Board
of Contract Appeals

11

I respectfully dissent. I would hold that FAR 52.222-30 fails to comply with FAR 22.404-129(c). Gulf Pacific (GP) was not given sufficient pre-award notice of an opportunity to price its options to account for a possible wage increase as required by FAR 22.404-12(c). The Air Force (AF) contends that FAR 52.222-30 is clear and unambiguous and provides sufficient notice and opportunity to increase option prices and it should be enforced. I disagree.

This case was originally assigned to me and I drafted the preliminary decision with which my colleagues disagree. I attach that decision as my dissent.

FINDINGS OF FACTS

This appeal and decision deal primarily with questions of law which is why there are no detailed recitation of facts other than the FAR provisions to be interpreted.

1. On 27 September 2016, the 1st Special Operations Contracting Squadron awarded to Gulf Pacific Contracting, LLC (GP) a firm-fixed-price, indefinite delivery indefinite-quantity (IDIQ) construction contract, contract number being FA4417-16-D-0002 (Contract No. 0002), to paint the interior of the facilities, paint the exterior of the facilities, and stripe runway pavement at Hurlburt Field in Florida. (R4, tab 4 at 1-4). The base period of performance is one year, with four option years. (R4, tab 4 at 5-6).

2. The contract incorporates FAR 52.222-6, CONSTRUCTION WAGE RATE REQUIREMENTS (AUGUST 2018), subparagraph (b)(1), that requires "laborers and mechanics employed or working upon the site of the work will be paid unconditionally. . . at rates not less than those contained in the wage determination of the Secretary of Labor which is attached hereto and made a part hereof (R4, tab 4 at 14). Attached to Contract No. 0002 was Schedule of Wage Rates No. FL160029, August 5, 2016 (R4, tab 4 at 33).

3. FAR 22.404-12, LABOR STANDARDS FOR CONTRACTS CONTAINING CONSTRUCTION REQUIREMENTS AND OPTION PROVISIONS THAT EXTEND THE TERM OF THE CONTRACT (MAY 2014), includes[10]:

> (a) Each time the contracting officer exercises an option to
> extend the term of a contract for construction, or a contract
> that includes substantial and segregable construction work,

---

[10] FAR 22.404-12 is not a FAR Part 52 clause and is not specifically incorporated into the contract, thus no cite to the record.

12

the contracting officer *must* modify the contract to incorporate the most current wage determination.

. . . .

(c)  The contracting officer *must* include in fixed-price contracts a clause that specifies one of the following methods, suitable to the interest of the Government, to provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract:

(1)  The contracting officer may provide the offerors the opportunity to bid or propose separate prices for each option period.  The contracting officer *must* not further adjust the contract price as a result of the incorporation of a new or revised wage determination at the exercise of each option to extend the term of the contract.  Generally, this method is used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years.

(2)  The contracting officer may include in the contract a separately specified pricing method that permits an adjustment to the contract price or contract labor unit price at the exercise of each option to extend the term of the contract.  At the time of option exercise, the contracting officer must incorporate a new wage determination into the contract, and must apply the specific pricing method to calculate the contract price adjustment.  An example of a contract pricing method that the contracting officer might separately specify is incorporation in the solicitation and resulting contract of the pricing data from an annually published unit pricing book *(e.g.*, the U.S. Army Computer-Aided Cost Estimating System or similar commercial product), which is multiplied in the contract by a factor proposed by the contractor (*e.g.*, .95 or 1.1). At option exercise, the contracting officer incorporates the pricing data from the latest annual edition of the unit pricing book, multiplied by the factor agreed to in the basic contract.  The contracting officer must not further adjust the contract price as a result of the incorporation of the new or revised wage determination.

13

(3)  The contracting officer may provide for a contract price adjustment based solely on a percentage rate determined by the contracting officer using a published economic indicator incorporated into the solicitation and resulting contract.  At the exercise of each option to extend the term of the contract, the contracting officer will apply the percentage rate, based on the economic indicator, to the portion of the contract price or contract unit price designated in the contract clause as labor costs subject to the provisions of the Construction Wage Rate Requirements statute.  The contracting officer must insert 50 percent as the estimated portion of the contract price that is labor unless the contracting officer determines, prior to issuance of the solicitation, that a different percentage is more appropriate for a particular contract or requirement. This percentage adjustment to the designated labor costs must be the only adjustment made to cover increases in wages and/or benefits resulting from the incorporation of a new or revised wage determination at the exercise of the option.

(4)  The contracting officer may provide a computation method to adjust the contract price to reflect the contractor's actual increase or decrease in wages and fringe benefits (combined) to the extent that the increase is made to comply with, or the decrease is voluntarily made by the contractor as a result of incorporation of, a new or revised wage determination at the exercise of the option to extend the term of the contract.  Generally, this method is appropriate for use only if contract requirements are predominately services subject to the Service Contract Labor Standards statute and the construction requirements are substantial and segregable. The methods used to adjust the contract price for the service requirements and the construction requirements would be similar.

(Emphasis added).  I refer to FAR 22.404-12(c)(1) as the "none" method, (c)(2) as the "separately specified pricing" method, (c)(3) as the "percentage" method and (c)(4) as the "actual" method. FAR 22.407.

4.  FAR 22.407 Solicitation Provision and Contract clauses, includes:

(e)  Insert the clause at 52.222-30, Construction Wage Rate Requirements-Price Adjustment (None or Separately

14

Specified Pricing Method), in solicitations and contracts if the contract is expected to be-

(1)  A fixed-price contract subject to the Construction Wage Rate Requirements statute that will contain option provisions by which the contracting officer may extend the term of the contract, and the contracting officer determines the most appropriate contract price adjustment method is the method at 22.404-12(c)(1) or (2); or

(2)  A cost-reimbursable type contract subject to the Construction Wage Rate Requirements statute that will contain option provisions by which the contracting officer may extend the term of the contract.

(f)  Insert the clause at 52.222-31, Construction Wage Rate Requirements-Price Adjustment (Percentage Method), in solicitations and contracts if the contract is expected to be a fixed-price contract subject to the Construction Wage Rate Requirements statute that will contain option provisions by which the contracting officer may extend the term of the contract, and the contracting officer determines the most appropriate contract price adjustment method is the method at 22.404-12(c)(3).

(g)  Insert the clause at 52.222-32, Construction Wage Rate Requirements-Price Adjustment (Actual Method), in solicitations and contracts if the contract is expected to be a fixed-price contract subject to the Construction Wage Rate Requirements statute that will contain option provisions by which the contracting officer may extend the term of the contract, and the contracting officer determines the most appropriate method to establish contract price is the method at 22.404-12(c)(4).

5.  Contract No. 0002 incorporates FAR 52.222-30 Construction Wage Rate Requirements-Price Adjustment (None or Separately Specified Method) that reads:

(a)  The wage determination issued under the Construction Wage Rate Requirements statute by the Administrator, Wage and Hour Division, U.S. Department of Labor, that is

effective for an option to extend the term of the contract, will apply to that option period.

(b)  The Contracting Officer will make no adjustment in contract price, other than provided for elsewhere in this contract, to cover any increases or decreases in wages and benefits as a result of-

(1)  Incorporation of the Department of Labor's wage determination applicable at the exercise of the option to extend the term of the contract;

(2)  Incorporation of a wage determination otherwise applied to the contract by operation of law; or

(3)  An increase in wages and benefits resulting from any other requirement applicable to workers subject to the Construction Wage Rate Requirements statute.

(R4, tab 4 at 14).  FAR 52.222-30 implements both the "none" and "separately specified pricing" methods, FAR 22.404-12(c)(1) &(c)(2).  Surprisingly there is no mention of the "separately specified pricing" method in FAR 52.222-30.

6.  FAR 52.222-31 implements the "percentage" method:

(b)  The Contracting Officer will adjust the portion of the contract price or contract unit price(s) containing the labor costs subject to the Construction Wage Rate Requirements statute to provide for an increase in wages and fringe benefits at the exercise of each option to extend the term of the contract in accordance with the following procedures."

(1)  The Contracting Officer has determined that the portion of the contract price or contract unit price(s) containing labor costs subject to the Construction Wage Rate Requirements statute is _____ *[Contracting Officer insert percentage rate]* percent.

(2)  The Contracting Officer will increase the portion of the contract price or contract unit price(s) containing the labor costs subject to the Construction Wage Rate Requirements statute by the percentage rate published in _____ *[Contracting Officer insert publication]*.

16

52.222-31(b)

7. FAR 22.404-12(c)(3), and FAR 52.222-32 implement the "actual" method:

> (c) The Contracting Officer will adjust the contract price or contract unit price labor rates to reflect the Contractor's actual increase or decrease in wages and fringe benefits to the extent that the increase is made to comply with, or the decrease is voluntarily made by the Contractor as a result of—

8. The second,[11] third and fourth methods provide for an increase in contract price when an option is exercised to compensate the contractor for the increase in costs caused by the inclusion of a new wage determination increasing wages, the first "none" method does not. The only protection available to a bidder when the "none" method is selected by the contracting officer is setting option prices to anticipate increased wages before award.

9. On 8 September 2017, the Department of Labor issued Wage Determination FL170262, adjusting the hourly prevailing wage for brush, roller, and spray painters to $16.55, representing $14.54 in wages and $2.01 in fringe benefits. (R4, tab 7 at 5) On September 14, 2017, while unilaterally modifying the contract to exercise Option Year 1, the AF incorporated Wage Determination FL170262. (R4, tab 7)

10. On October 11, 2017, GP filed with the AF a certified claim for an equitable adjustment in the amount of $120,000, representing the additional costs it would incur as a result of the prevailing wage adjustment. (R4, tab 8 at 1) GP stated, "[t]here was no opportunity to negotiate an increase in the event of an increase in the wage determination" (id. at 2).

11. On October 23, 2017 the AF issued a final decision, relying on FAR 51.222-30, denying the claim:

> Contract FA4417-16-D-0002 was awarded on September 26, 2016. The requirement was set aside for 8(a) competitive proposals. The contract is a firm-fixed price IDIQ contract with a base and four option years. The contract contains a

---

[11] While FAR 52.222-31 and 32 provide instructions on how the increase for the "percentage method" and "actual method" is calculated. FAR 52.222-30 which implements both the "none" and "separately specified pricing" methods provides no instructions on the "separately specified pricing" method. We see no obvious explanation for this omission.

pre-priced schedule for the base year and each option year. The contractor was given the opportunity to include pricing for wage rate increases in their proposal.

. . . .

As a result of FAR 52.222-30 being incorporated into the solicitation and resulting contract, no adjustment in contract price will be made. The clause is very specific in stating that no adjustment in contract price to cover any increases or decreases in wages and benefits will be made as a result of incorporation of the wage determination applicable to the exercise of the option to extend the term of the contract. This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals.

(R4, tab 9) On November 20, 2017, GP appealed the final decision to the Board (R4, tab 10) and the appeal was docketed as ASBCA No. 61434 on November 24, 2017.

DECISION

*Positions of the Parties*

GP relies on three arguments. First, GP states there was nothing in the solicitation or contract warning GP that its only ability to recover for an increased wage determination was by adjusting its option bid prices upward before award. (App. reply br. at 2) It is undisputed that based on FAR 52.222-30, GP was not allowed an adjustment upon option exercise and incorporation of a new wage determination that increased GP labor costs. (App. amended br. at 1) According to GP, the inclusion of FAR 52.222-30 in the contract "does not sufficiently notify the contractor of the mandate in FAR 22.404-12(c)(1) that the contracting officer must not further adjust the contract price as a result of the incorporation of a new or revised wage determination." (App. amended br. at 11) GP argues that it was entitled to a clear warning pointing out that its only ability to recover for increased labor costs was to adjust its pre-award option bids upward to account for the possibility of an increase in wages at option exercise. (*id.*) Second, GP argues that the conflicting language of FAR 52.222-30 and FAR 22.404-12 create ambiguity that should be decided in GP's favor. (App. amended br. at 12) Finally, the Contract was for a total potential term of up to 5 years. (Finding 1) FAR 22.404-2(c)(1) includes, "Generally, this method is used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years." (App. reply br. at 5-6, FAR 22.404-12(c)(1)) GP argues that, based on the 3 year language in FAR 22.404-2(c)(1), the CO should not have selected the "none" option.

18

For its part, the AF argues it complied with the requirements associated with FAR 22.404-12(c)(1). The Solicitation incorporated the mandatory clause at FAR 52.222-30, warning that no price adjustment would be provided. (Gov't br. at 2) Accordingly, by virtue of FAR 52.222-30 alone, offerors[12] were provided the opportunity to propose separate prices for each option period. The AF also points out that offerors were required to complete the Line Item List, proposing separate unit prices and line item prices for the base period and each option period. The Line Item List provides each service that may be ordered and the estimated quantity to be ordered. (Gov't br. at 5) The AF concludes by stating that it satisfied the requirements of FAR 22.404-12(c)(1) and it was not required to highlight a contract clause appellant should have read. *See Systems & Computer Information, Inc.*, 78- 1 BCA ¶ 12,946. (Gov't br. at 5-7)

*GP May Challenge the AF's Adherence to FAR 22.404-12(c)*

As a preliminary matter I must determine if GP has a cause of action to challenge the AF's adherence with FAR 22.404-12. In this regard I follow the guidance of the Court of Appeals for the Federal Circuit in *Freightliner Corp. v. Caldera*, 225 F.3d 1361 (Fed. Cir. 2000):

> In order for a private contractor to bring suit against the Government for violation of a regulation, that regulation must exist for the benefit of the private contractor. *See Cessna*, 126 F.3d at 1451; *Rough Diamond Co. v. United States*, 173 Ct. Cl. 15, 351 F.2d 636, 640-42 (Ct. Cl. 1965). If, however, the regulation exists for the benefit of the Government, then the private contractor does not have a cause of action against the Government in the event that a contracting officer fails to comply with the regulation. *See Cessna*, 126 F.3d at 1451-52; *Rough Diamond*, 351 F.2d at 642.

(*Id.* at 1365) FAR 22.404-12(c) starts with:

> The contracting officer must include in fixed-price contracts a clause that specifies one of the following methods, suitable to the interest of the Government, *to provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract*:

---

[12] We use "offeror" synonymously with bidder and proposer.

(emphasis added) (Finding 3). What follows are four "Methods" to provide relief to the contractor when a new wage determination is incorporated into their contract at an option exercise as follows:

> (1) The "none" method. The contracting officer, before award, may allow the offerors to increase the price of each option year to account for the risk of a new wage determination increasing the wage rate being incorporated into the contract upon option exercise.

> (2) The "separately specified pricing" method. The contracting officer may include in the contract a separately specified pricing method that permits an adjustment to the contract price or contract labor unit price at the exercise of each option to extend the term of the contract.

> (3) The "percentage" method. The contracting officer may provide for a contract price adjustment based solely on a percentage rate determined by the contracting officer using a published economic indicator incorporated into the solicitation and resulting contract.

> (4) The "actual" method. The contracting officer may provide a computation method to adjust the contract price to reflect the contractor's actual increase or decrease in wages and fringe benefits (combined) to the extent that the increase is made to comply with, or the decrease is voluntarily made by the contractor as a result of incorporation of, a new or revised wage determination at the exercise of the option to extend the term of the contract.

(Finding 3, 5-7) It is clear that each of these four "methods" benefits contractors by allowing them to account for the risk of mandatory inclusion of new wage determinations increasing wages at each option exercise. Therefore, GP has a cause of action to challenge the AF's compliance with FAR 22.404-12 and may pursue its defense.

*FAR 22.404-12(c)(1) is Not Limited to Contracts Lasting Three Years*

FAR 22.404-12(c)(1) ends with the following language:

> (1) The contracting officer may provide the offerors the opportunity to bid or propose separate prices for each option period. The contracting officer *must* not further adjust the contract price as a result of the incorporation of a new or revised wage determination at the exercise of each option to extend the term of the contract. *Generally, this method is used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years.*

20

(Finding 3) (Emphasis added)  GP argues that because its contract had a base year and four option years for a total of five years it was improper for the AF to select Method (1). (App. reply br. at 5-6)  I disagree.  The word "Generally" cannot reasonably be interpreted as mandatory language imposing a strict limit on the use of 22.404-12(c)(1) to contracts lasting no more than three years.  It may well have been "inappropriate" for the AF to select Method (1) for a five year contract, but it was within the CO's discretion.  I would hold GP's interpretation is unreasonable.

*There is No Ambiguity Between FAR 52.222-30 and FAR 22.404-12*

GP argues:

> At a minimum, the provisions of FAR 52.222-30 and FAR 22.404-12 create an ambiguity *within the Contract* with respect to how increased costs resulting from the incorporation of a new wage determination during the option years will be handled.

(Emphasis added) (App. br. at 14)  The flaw in this argument is readily seen in GP's own language.  FAR 22.404-12 is not "within the Contract."  (*Id.*)  I deal with both FAR Part 52 and Part 22 in this decision.  FAR Part 52 contains clauses that may be incorporated into contracts, the other FAR Parts do not.  FAR 22.404-12 provides policy guidance to procurement officials to include which FAR Part 52 clauses should be incorporated into contracts.

The AF cites well-known contract interpretation case precedence:

> The contract terms are interpreted and read as a whole, giving reasonable meaning to all of its parts, and without leaving 'a portion of the contract useless, inexplicable, void, or superfluous.'  *Certified Construction Company of Kentucky, LLC*, 15-1 BCA ¶ 36,068 at 176,133.

(Gov't br. at 11)  Since FAR 22.404-12 is not incorporated into the "whole" of the contract this contract interpretation law cannot apply.  While ambiguities may exist between clauses or language within a contract, I know of no precedent finding an ambiguity between contract clauses within a contract and FAR policy guidance outside of a contract as is the case with FAR 22.404-12 and FAR 52.222-30.  There is no ambiguity.

*Line Item List*

I disagree with the AF's argument that the fact offerors were required to break out prices by line item affords GP the clear warning it believes it is entitled to. I see nothing in line item pricing that informs offerors that the only way to protect themselves from wage determination price increases at option exercise was to increase option prices before award.

*Other than FAR 522.222-30(b), the AF did not Inform GP of its Rights and Risks Under FAR 22.404-12(c)(1)*

It is undisputed that except for FAR 52.222-30(b), the AF did not inform GP in the solicitation, or otherwise, that its only protection against increases in wages at option exercise was to adjust its bid prices upward to cover the risk. (App. br. at 2- 6) The AF does not point to any evidence, other than the language of FAR 52.222-30(b), providing such notice to GP. (Finding 10) I do not consider FAR 52 222-30(b) to provide such notice.

*FAR 52.222-30(b) is Unambiguous*

The contract incorporates FAR 52.222-30(b) that read in part:

> (b) The Contracting Officer will make no adjustment in contract price, other than provided for elsewhere in this contract, to cover any increases or decreases in wages and benefits as a result of-
>
> (1) Incorporation of the Department of Labor's wage determination applicable at the exercise of the option to extend the term of the contract;

(Finding 5) I agree with the AF that FAR 52.222-30(b) is unambiguous for our purposes[13]. It clearly states that the contracting officer "will make no adjustment in contract price" for increases in wages resulting from incorporation of DOL wage determinations at option exercise. However, this case involves other FAR policy provisions that must be complied with.
.
*The Obligation to Read the Contract Does not Extend to FAR Policy*

The AF argues:

---

[13] FAR 22.407(e) directs that FAR 52.222-30 address both the None or Separately Specified Pricing Method. (Finding 4) It says nothing about the Separately Specified Pricing Method, as do FAR 52.222-31 & 32 do for their pricing methods. (Finding 4, 5) This is another flaw in FAR 52.222-30.

22

By incorporating the mandatory clause at FAR 52.222-30 and providing "offerors the opportunity to bid or propose separate prices for each option year," Respondent met the requirements of FAR 22.404-12(c)(1). Respondent was not required to highlight a contract clause Appellant should have read.

(Gov't br. at 2, 17)  I agree that the AF "was not required to highlight a contract clause Appellant should have read."  However, this argument does not apply to FAR 22.404-12(a) & (c) and FAR 22.407 that are not contract clauses and not within the scope of the above quote.  They set forth FAR policy, and are not "contract clause[s] that Appellant should have read."  I would not impose upon offerors an obligation to review FAR's numerous "Parts" to ferret out and interpret FAR policy guidance such as FAR 22.404-12 and FAR 22.407 that are not contract clauses "within the contract."

*Interpreting the First Sentence in FAR 22.404-12(c)(1)*

FAR 22.404-12(c)(1), Method (1), selected by the AF for Contract 0002 reads:

> *(1)  The contracting officer may provide the offerors the opportunity to bid or propose separate prices for each option period.*  The contracting officer *must* not *further adjust* the contract price as a result of the incorporation of a new or revised wage determination at the exercise of each option to extend the term of the contract. Generally, this method is used in construction-only contracts (with options to extend the term) that are not expected to exceed a total of 3 years.

(Finding 3) (Emphasis added)  I first deal with the perplexing use of the word "may" in the first sentence.  Taken literally it means "may" or "may not."  The "may not" interpretation seemingly would allow the CO to prohibit offerors from pricing option years to account for wage determination risk.  This is an absurd interpretation because it is totally at odds with the intent expressed in FAR 22.404-12(c) to protect offerors.  Offerors have the unilateral right to price their offers any way they want.  Contracts should be interpreted so as to avoid such absurd results.  *Ash Britt, Inc.*, ASBCA Nos. 55613, 55614, 09-1 BCA ¶ 34,086 at 168,536 ("Contract construction should avoid absurd results."  (Citation omitted)); *Applied Companies*, ASBCA No. 50593, 05-2 BCA ¶ 32,986 at 163,478 ("Construction of contract terms should avoid absurd and whimsical results."  (Citation omitted)); *C.S. McCrossan Construction, Inc.*, ASBCA No. 49647, 00-1 BCA ¶ 30,661 at 151,381 ("A contract should be construed in a reasonable manner to 'avoid absurd and whimsical results.'"  (Citation omitted))  To avoid the absurd result I

23

will not interpret the word "may" in FAR 22.404-12(c)(1) literally. The word "may" without "may not" excludes any interpretation limiting an offeror's right to price its offer. Therefore, the most reasonable interpretation under these circumstances is to interpret "may" to mean "will." Otherwise, the first sentence might be unenforceably vague. *Metro Machine dba General Dynamics NASSCO Norfolk*, ASBCA No. 61817, 20-1 BCA ¶ 37633 at 182,713. Interpreting "may" to mean "will" resolves this potential "can of worms" and compliments our conclusion that FAR 22.404-12(c) requires the CO to provide notice to offerors of how they can protect themselves from the risks associated with the "none" Method (1). This interpretation deals with an ambiguity, but does not substantially contribute to the interpretation discussed below that I rely upon to reach my suggested decision.

*FAR 22.404-12(c) is Unambiguous*

Next I consider the language of FAR 22.404-12(c):

> (c) The contracting officer *must* include in fixed-price contracts a clause that specifies one of the following methods, suitable to the interest of the Government*, to provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract:*

(Emphasis added) The CO "must" afford the offerors and opportunity to "provide an allowance for any increases or decreases in labor costs that result from the inclusion of the current wage determination at the exercise of an option to extend the term of the contract." Not-with-standing FAR 22.404(c)(1)'s interpretation, FAR 22.404(c) is clear and unambiguous and requires notice to bidders of how to mitigate loss from Method (1).

*FAR 52.222-30 Does Not Satisfy the Obligation Imposed by FAR 2.404-12(c)*

The AF argues that the "no adjustment" language in FAR 52.222-30 provides notice and opportunity to adjust option prices to protect against an increase in the wage determination. The relevant language in FAR 52.222-30 is:

> (b) The Contracting Officer *will make no adjustment* in contract price, other than provided for elsewhere in this contract, to cover any increases or decreases in wages and benefits as a result of-(1) Incorporation of the Department of Labor's wage determination applicable at the exercise of the option to extend the term of the contract;

(Finding 4).  I disagree that this language provides sufficient notice that "The contracting officer may[14] provide the offerors the opportunity to bid or propose separate prices for each option period."  This language says nothing about the greater risk imposed by Method (1) or explains when and how offerors may make adjustments to account for this risk.  Methods (2), (3), and (4) detailed in FAR 22.404-12(c) and implementing provisions FAR 52.222-31 & -32 explain how the option price will be adjusted, FAR 52.222-30, Method (1), does not.  (Findings 3, 4-7)  As stated above, FAR 22.404-12(c) requires that a warning about the risk of a new wage determination increasing costs and an opportunity for offerors to address this risk by pricing the options be included in the implementing Part 52 clause.  This is particularly important because under "none" Method (1) if wages increase there is no ability to recover increased costs after award as there is with the other three methods.  The prohibition against post award option price increase in FAR 52.222-30 is extremely harsh and FAR 22.404-12(c) demands that it be made clear to offerors, in the solicitation, that the only opportunity they have to mitigate the risk is by pricing the option years before award.  The AF's interpretation of FAR 52.222-30 is unreasonable and I would not enforce it.

---

[14] We interpreted "may" to mean "will" above.

In accordance with the above I would sustain GP's appeal.

Dated: September 16, 2021

_____
CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61434, Appeal of Gulf Pacific Contracting, LLC, rendered in conformance with the Board's Charter.

Dated: September 16, 2021

_____
PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals